The summary judgment appealed from is reversed, and we remand for entry of judgment in plaintiff's favor consistent with this opinion.

674 A.2d 638

NATIONAL WESTMINSTER BANK NJ, PLAINTIFF–RESPON-DENT, v. ANDERS ENGINEERING, INC. AND GEORGE CHAJ-KOWSKY, DEFENDANTS–APPELLANTS, AND EVANS–KNOTT II, A NEW JERSEY GENERAL PARTNERSHIP; JONATHAN L. EVANS AND JOHN E. KNOTT, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted December 20, 1995—Decided April 23, 1996.

Before Judges LANDAU, KLEINER and HUMPHREYS.

*Ridgway, Ridgway & Stayton,* attorneys for appellants (*Herbert J. Stayton, Jr.,* on the brief).

*Horn, Goldberg, Gorny, Daniels, Plackter & Weiss,* attorneys for respondent (*Joseph M. Garemore,* on the brief).

HUMPHREYS, J.A.D.

Evans–Knott II ("E & K"), a general partnership, transferred real property while insolvent to Anders Engineering, Inc. ("Anders"). According to the deed, the consideration was "debt forgiveness." Thereafter, Anders conveyed the real property to its principal shareholder, George Chajkowsky for $55,000.00. Plaintiff, a creditor of E & K, obtained a summary judgment against Anders and Chajkowsky on the ground that both transfers were fraudulent under the Uniform Fraudulent Transfer Act ("UFTA"), *N.J.S.A.* 25:2–20 to –34, adopted in New Jersey in 1988. This statute replaced the Uniform Fraudulent Conveyance Act ("UFCA"), *N.J.S.A.* 25:2–7 to –19. *See Flood v. Caro Corp.,* 272 *N.J.Super.* 398, 403, 640 *A.*2d 306 (App.Div.1994).

Anders and Chajkowsky appeal. They contend that: (1) a transfer by an insolvent partnership to a third party in order to satisfy a debt of the partners is not a fraudulent conveyance; (2) a genuine material issue of fact is present as to whether Chajkowsky is a good faith transferee who took for value; (3) plaintiff is barred by laches; and (4) a constructive trust should be imposed on the real property for the property taxes paid by them while holding title.

After a thorough examination of the record, we affirm the holdings that the transfer to Anders was a fraudulent transfer, and that plaintiff is not barred by laches. We reverse the holding that the transfer from Anders to Chajkowsky was fraudulent. We remand for an evidentiary hearing as to whether Chajkowsky was a good faith transferee for value, and whether a constructive trust should be imposed on the property for the real property taxes.

## I

### TRANSFER FROM E & K TO ANDERS

█ The transfer by E & K to Anders was constructively fraudulent under *N.J.S.A.* 25:2–27(a) of the UFTA. That subsection provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> [*N.J.S.A.* 25:2–27(a).]

█ In consideration of the transfers, Anders forgave a debt of approximately $57,000.00 owed to it by other partnerships in which E & K's partners were also partners. The definition of "value" in the UFTA includes satisfaction of an antecedent debt. *N.J.S.A.* 25:2–24(a). However, the "value" given in exchange for the transfer "must be received by and for the benefit of the debtor-transferror and not some other person or entity." *Flood v. Caro Corp., supra,* 272 *N.J.Super.* at 406, 640 *A.2d* 306. A

transfer made in satisfaction of the debt of another is not made for reasonably equivalent value. *Id.* at 407, 640 *A.*2d 306; *Hollander v. Gautier,* 114 *N.J. Eq.* 485, 489, 168 *A.* 860 (Ch.1933). *See also N.J.S.A.* 25:2–27(a).

Thus, the transfer of the real property by E & K to Anders to satisfy debts of the partners of E & K was not a transfer for a "reasonably equivalent value" to E & K. Hence, the transfer from E & K to Anders, while E & K was insolvent, was constructively fraudulent as to the plaintiff. We also find no basis for barring plaintiff's claim on the ground of laches. *See Lavin v. Bd. of Ed. of City of Hackensack,* 90 *N.J.* 145, 151–153, 447 *A.*2d 516 (1982).

## II

### TRANSFER FROM ANDERS TO CHAJKOWSKY

■ Under the predecessor statute, UFCA, *N.J.S.A.* 25:2–15, plaintiff would not prevail against Chajkowsky if Chajkowsky was a purchaser for fair consideration without knowledge of the fraud at the time of the purchase. *Trus Joist Corp. v. Treetop Assoc., Inc.,* 97 *N.J.* 22, 30, 477 *A.*2d 817 (1984) (under the UFCA, a creditor may not prevail "against a subsequent purchaser or mortgagee who acquires title for fair consideration *'without knowledge of the fraud at the time of the purchase'"*) (emphasis in the opinion).

Plaintiff contends that the present statute, the UFTA, has substantially diminished the protection previously afforded such a subsequent purchaser or mortgagee by the UFCA. Plaintiff concedes that under the UFTA, a transfer is not voidable as against a good faith transferee for reasonably equivalent value if the initial transfer was made with an actual intent to hinder, delay or defraud creditors. *See N.J.S.A.* 25:2–25(a). Plaintiff argues, however, that if the initial transfer was only *constructively* fraudulent, i.e. no actual intent to defraud, then a subsequent transfer to a good faith transferee for reasonably equivalent value could be set aside by the creditor. The subsequent transferee, plaintiff con-

tends, would not be liable to the creditor for a money judgment, but the transfer to the subsequent transferee would be set aside.

The pertinent statutory sections are as follows:

Transfers fraudulent as to present and future creditors

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

[*N.J.S.A.* 25:2–25.]

Defenses, liability and protection of transferee

a. A transfer or obligation is not voidable under subsection a. of R.S. 25:2–25 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

b. Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subsection a. of R.S. 25:2–29, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection c. of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

(1) The first transferee of the asset or the person for whose benefit the transfer was made; or

(2) Any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.

c. If the judgment under subsection b. of this section is based upon the value of the asset transferred, the judgment shall be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

d. Notwithstanding voidability of a transfer or an obligation under this article, a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to

(1) A lien on or a right to retain any interest in the asset transferred;

(2) Enforcement of any obligation incurred; or

(3) A reduction in the amount of the liability on the judgment.

e. A transfer is not voidable under subsection b. of R.S. 25:2–25 or R.S. 25:2–27 if the transfer results from:

(1) Termination of a lease upon default by the debtor when the termination is pursuant to the lease and applicable law; or

(2) Enforcement of a security interest in compliance with Article 9 of the Uniform Commercial Code, N.J.S. 12A:9–101 et seq.

f. A transfer is not voidable under subsection b. of R.S. 25:2–27:

(1) To the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien;

(2) If made in the ordinary course of business or financial affairs of the debtor and the insider; or

(3) If made pursuant to a good-faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor.

[*N.J.S.A.* 25:2–30.]

Plaintiff's construction of the UFTA would lead to an anomalous result. The UFTA would afford protection to a subsequent good faith transferee of property which initially had been fraudulently conveyed; however, such a transferee would not be protected if the initial conveyance was only constructively fraudulent. Plaintiff does not offer any persuasive reason as to why the Legislature would want to protect a later recipient of a truly fraudulent transfer but not the later recipient of a constructively fraudulent transfer.

The legislative history of the UFTA does not even hint at any intention by either the New Jersey Legislature or the Commission on Uniform State Laws to so alter the rights of such good faith transferees, except perhaps as to "insiders." *See N.J.S.A.* 25:2–27. This conclusion is fortified by the following New Jersey Legislative Committee Statement regarding the UFTA: "However, after a fraudulent transfer has been made or a fraudulent obligation has been incurred, a showing by a transferee or obligee that sufficient consideration has been given in good faith for a transfer or obligation is a complete defense even though the debtor is shown to have intended to hinder, delay or defraud creditors." *See also* Richard E. Cherin, *Fraudulent Transfers Redefined Under New Act,* 122 *N.J.L.J.* 1362 (1988) (UFTA is "[s]imilar to the UFCA and Section 548 of the Bankruptcy Code, under Section 8 of the UFTA (R.S. 25:2–30), notwithstanding voidability of a transfer or obligation under the act, the interests

of a good-faith transferee are protected 'to the extent of value given the debtor . . .' ").

We are satisfied the Legislature in enacting the UFTA did not intend to modify substantially, except with respect to insiders, the protection that has been historically given to good faith transferees for value regardless of whether the initial conveyance was actually or constructively fraudulent. As we stated in *Flood v. Caro Corp., supra,* 272 *N.J.Super.* at 404, 640 *A.*2d 306, *N.J.S.A.* 25:2–25 of the UFTA is not "grossly different" from its predecessor, the UFCA.

Our view is in accord with fundamental principles of statutory construction. Ascertaining legislative intent is a paramount judicial goal and overrides any literal reading of a statute. *See Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994). "[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion. . . .' " *Schierstead v. Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959) (citations omitted). When a literal reading of the statute leads to "absurd consequences," the court must "restrain the words" and "seek the true legislative intent." *Id.* at 231, 148 *A.*2d 591. The "entire legislative scheme" must be considered. *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). "The inquiry in the ultimate analysis is the true intention of the law; and, to this end, the particular words are to be made responsive to the essential principle of the law. It is not the words but the internal sense of the law that controls." *Wollen v. Borough of Fort Lee,* 27 *N.J.* 408, 418, 142 *A.*2d 881 (1958).

Reading the UFTA sensibly and in consonance with the legislative scheme, if Chajkowsky is a good faith transferee for a reasonably equivalent value, then he has a defense to plaintiff's claim.

Plaintiff asserts that Chajkowsky did not raise this defense below. We disagree. Defendants in their brief in opposition to

the motion for summary judgment asserted that Anders and Chajkowsky took the property in good faith because they did not know of E & K's obligation to the plaintiff. This was a sufficient raising of the defense.

Whether this defense will succeed turns on questions of fact. Chajkowsky produced checks totaling $55,000.00 which he claimed represented the amount that he paid for the property. The value of the property does not appear to exceed $55,000.00. However, the deed and affidavit of consideration show a consideration of $1.00. The $55,000.00 payment may have been a capital contribution rather than the purchase price of the real property. These factual questions preclude the granting of summary judgment and require a remand for trial on this issue. *See Flood v. Caro, Corp., supra,* 272 *N.J.Super.* at 405–407, 640 *A.*2d 306; *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995); *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 74, 110 *A.2d* 24 (1954).

On remand, the judge should also consider whether Anders and Chajkowsky are entitled upon a consideration of the equities to have a constructive trust imposed on the property for any real estate taxes paid by them. *See Rudbart v. North Jersey District Water Supply Comm'n,* 127 *N.J.* 344, 363–368, 605 *A.*2d 681, *cert. denied,* 506 *U.S.* 871, 113 *S.Ct.* 203, 121 *L.Ed.*2d 145 (1992); *Wattles v. Plotts,* 120 *N.J.* 444, 453, 577 *A.*2d 131 (1990).

Affirmed in part. Reversed in part and remanded for further proceedings consistent with this opinion.